396 So.2d 144 (1980)
METROPOLITAN DADE COUNTY and the Board of County Commissioners of Metropolitan Dade County, Appellants,
v.
CITY OF MIAMI, City of Miami Beach, Sol Green, Lynn Jacobs, Charles Bardakji, Omni International Talent Associates, Inc., Appellees.
No. 57406.
Supreme Court of Florida.
October 16, 1980.
As Modified on Denial of Rehearing April 14, 1981.
Stuart L. Simon, Dade County Atty., and R.A. Cuevas, Jr., Asst. County Atty., Miami, for appellants.
George F. Knox, Jr., City Atty., and Mikele S. Carter, Asst. City Atty., Miami, for City of Miami.
Robert L. Shevin, City Atty., and Bruce M. Singer, Asst. City Atty., Miami Beach, for City of Miami Beach.
Richard N. Friedman, Miami, for Sol Green, Lynn Jacobs, Charles Bardakji, Omni Intern. Talent Associates, Inc.
McDONALD, Justice.
Dade County appeals a judgment invalidating a county ordinance regulating taxicabs throughout Dade County, including the cities of Miami and Miami Beach. The trial judge based his ruling on a declaration that article VIII, section 4, Florida Constitution[1] prevails over article VIII, section 6(e), Florida *145 Constitution.[2] We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution (1972).
In 1974 the legislature transferred all of the Public Service Commission's existing authority to regulate taxicabs to those charter counties which wished to accept that responsibility.[3] The voters of Dade County amended their home rule charter in 1976 to expand the county's authority to regulate taxicabs to include the entire county. In 1979 the county enacted an ordinance designed to provide comprehensive countywide regulation of taxicabs. For many years prior thereto, however, the cities of Miami and Miami Beach had regulated taxicabs within their respective city limits. These cities filed suit contending that the county exceeded its authority in enacting such a comprehensive ordinance. To support their contention, the cities relied on section 323.052(3), Florida Statutes,[4] which provides that cities regulating for-hire vehicles on July 1, 1974 would continue to do so "unless such authority is transferred to the county by a majority vote of the governing body of the municipality." Neither city relinquished its authority by means of this statutory procedure or by any other method.
The trial court determined that two provisions of the state constitution pertain to the transfer of powers between counties and municipalities: Article VIII, section 4; and article VIII, section 11(1)(d), 1885 Constitution,[5] which is incorporated into the *146 1968 Constitution by article VIII, section 6(e). The trial court first found the challenged ordinance to have been properly enacted pursuant to section 11(1)(d) and the county home rule charter. The court also found, however, that section 4 controls over section 6(e). According to the trial court, therefore, the "or as otherwise provided by law" language in section 4 means that the general law provision in section 323.052(3) should prevail over the home rule provisions in sections 6(e) and 11(1)(d), the county home rule charter, and the case law interpreting those provisions. Since the statutory procedure had not been followed, the court invalidated the ordinance, and this appeal followed.
To support its finding that section 4 prevails over section 6(e), the trial court relied on Sarasota County v. Town of Longboat Key, 355 So.2d 1197 (Fla. 1978). That reliance is misplaced. Sarasota County, stands for the proposition, inter alia, that both charter and noncharter counties are subject to the provisions of section 4. The instant case, on the other hand, presents the question of whether section 4 prevails over the explicit savings clause in section 6(e).
The main purpose in construing constitutional provisions is to ascertain the intent of the framers and to effectuate the object designed to be accomplished. State ex rel. Dade County v. Dickinson, 230 So.2d 130 (Fla. 1969); State ex rel. West v. Gray, 74 So.2d 114 (Fla. 1954); Amos v. Mathews, 99 Fla. 1, 126 So. 308 (1930); Mugge v. Warnell Lumber & Veneer Co., 58 Fla. 318, 50 So. 645 (1909). Section 6(e) is a clear and unambiguous statement of intent by the state's electors. That section provides that the Dade County Home Rule Amendment (section 11, article VIII, 1885 Constitution) "shall remain in full force and effect ... as if this article [VIII, 1968 Constitution] had not been adopted." To hold that section 4 prevails over this direct savings clause would go against the intent expressed in section 6(e) and would thwart the objective of preserving Dade County's constitutional home rule amendment. We hold, therefore, that section 6(e) controls over section 4 and that the trial court erred in finding otherwise.
Because of its finding that section 4 prevails over section 6(e), the trial court saw no necessity to rule on the conflict between the county ordinance and section 323.052(3). Due to our holding above, however, that question must now be considered.
This Court has noted that the metropolitan government of Dade County is unique in this state due to its constitutional home rule amendment. See McNayr v. Kelly, 184 So.2d 428 (Fla. 1966). That amendment gives Dade County numerous powers which set Dade apart from the state's other counties. One such difference is Dade County's power to enact ordinances, when expressly authorized by the home rule amendment, which conflict with the state constitution or with state law.[6]
Numerous decisions have invalidated Dade County ordinances and parts of the Dade County Charter, however, because of impermissible, unauthorized conflict with the state constitution or with general state *147 law.[7] In State ex rel. Dade County v. Dickinson, 230 So.2d 130 (Fla. 1969), this Court held that nothing in the Dade County Home Rule Amendment allowed that county to exceed the ten-mill constitutional cap on county taxes. This Court has also found nothing in section 11 which would permit Dade County cities to abrogate the statutory debt limit imposed on cities. Seminole Rock Prods., Inc. v. Town of Medley, 180 So.2d 457 (Fla. 1965). Since state law recognized fortunetelling and similar occupations, a Dade County ordinance prohibiting engaging in such occupations was invalidated because the home rule amendment did not expressly reserve such power in the county. Board of County Comm'rs. of Dade County v. Boswell, 167 So.2d 866 (Fla. 1964). In Kaulakis v. Boyd, 138 So.2d 505 (Fla. 1962), this Court struck down a section of the county charter which waived the county's tort immunity. Nothing in section 11 permitted such waiver, and the constitution specifically prohibited it. The Court also invalidated Dade County's 1958 taxicab ordinance as creating impermissible conflict with state law. Dade County v. Mercury Radio Serv., Inc., 134 So.2d 791 (Fla. 1961). Finally, in Dade County v. Kelly, 99 So.2d 856 (Fla. 1957), the Court held that Dade could not make piecemeal transfers of the sheriff's duties, in contravention of the governor's constitutional power to remove constitutional officers, without abolishing the office of sheriff.
The Third District Court of Appeal has also considered whether Dade County ordinances can conflict with general laws and with the state constitution. That court struck down Dade's requirement that claims against the county be filed within sixty days as being in unauthorized conflict with the statutory three-year notice period. Scavella v. Fernandez, 371 So.2d 535 (Fla. 3d DCA 1979). Likewise, the four-year statute of limitations on filing suit against a county was found to prevail over Dade's reduction of that time to one year. Dade County v. Lambert, 334 So.2d 844 (Fla. 3d DCA 1976).
In the above-cited cases, the conflict has been in areas not specifically authorized by section 11. In several cases, on the other hand, either authorized, permissible conflict, or no conflict, has been found, resulting in the validation of numerous county ordinances and portions of the county charter.[8] Such cases are not controlling in the instant case, however, because we hold that the ordinance in question is not expressly authorized by section 11.
The Dade County Home Rule Charter Amendment specifically provides that Dade County can do nothing to limit or restrict the power and jurisdiction of the Public Service Commission.[9] Prior to the 1974 amendment which prompted the instant *148 case, chapter 323 provided that the power to regulate taxicabs resided solely with the Public Service Commission and with the state's municipalities. Counties, whether chartered or not, shared none of this power. Thus, this Court struck down Dade County's 1958 attempt to regulate taxicabs in the county's unincorporated areas, regardless of an original charter provision permitting such regulation. Dade County v. Mercury Radio Serv., Inc., 134 So.2d 791 (Fla. 1961).
By passing the amendment allowing charter counties to regulate taxicabs, the legislature has acknowledged that thereafter such regulation is a function subject to countywide control. If that amendment had said no more, the ordinance in question would be valid. See Miami Shores Village v. Cowart, 108 So.2d 468 (Fla. 1958).
The legislature's grant of authority to charter counties to regulate taxicabs, an authority the counties did not previously have, however, is a limited grant. It includes a proviso allowing municipalities to continue such regulation unless they formally and affirmatively accede to their counties' authority. The appellee cities in the instant case did not give up their power to regulate taxicabs in the manner specified by statute. Since the transfer of powers proviso is such an integral part of the total amendment, there is no way to separate that limitation on a charter county's power from the grant of power to charter counties.
Although the Dade County Home Rule Amendment allows that county to enact ordinances which conflict with state law, it can do so only when such conflict is in areas specifically authorized in the home rule amendment.[10] We can find no provision in section 11 that expressly authorizes Dade County to contravene the method of transferring power set out in section 323.052(3). We have kept in mind the home rule amendment's admonishment that section 11 is to be liberally construed in order to effectuate the purpose of giving home rule to Dade County.[11] Section 11 also provides, however, that, if conflict is not expressly authorized, general state law must prevail.[12] Indeed, if unauthorized conflict is found, we are instructed that section 11 is to "be strictly construed to maintain ... [the] supremacy of this Constitution and of the Legislature in the enactment of general laws pursuant to this Constitution." Art. VIII, § 11(9), Fla. Const. (1885).
We hold, therefore, that the ordinance in question is in unauthorized conflict with state law because Dade County did not follow the statutory method for transferring power.[13] The ordinance is invalid to the extent that the county seeks to regulate taxicabs in Miami and Miami Beach. Unless the cities of Miami and Miami Beach accede to regulation by the county, Dade County does not have the authority to usurp the regulation of taxicabs within the city limits of those municipalities. We thus affirm the judgment of the trial court, but for different reasons.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ENGLAND and ALDERMAN, JJ., concur.
BOYD, J., dissents.
NOTES
[1] Art. VIII, § 4, Fla. Const., reads as follows:

Transfer of powers.-By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
[2] Art. VIII, § 6(e), Fla. Const., reads as follows:

(e) CONSOLIDATION AND HOME RULE. Article VIII, Sections [1] 9, [2] 10, [3] 11 and [4] 24, of the Constitution of 1885, as amended, shall remain in full force and effect as to each county affected, as if this article had not been adopted, until that county shall expressly adopt a charter or home rule plan pursuant to this article. All provisions of the Metropolitan Dade County Home Rule Charter, heretofore or hereafter adopted by the electors of Dade County pursuant to [3] Article VIII, Section 11, of the Constitution of 1885, as amended, shall be valid, and any amendments to such charter shall be valid; provided that the said provisions of such charter and the said amendments thereto are authorized under said [3] Article VIII, Section 11, of the Constitution of 1885, as amended.
[3] § 323.052(1), Fla. Stat., which reads as follows:

(1) Notwithstanding any other provisions of this part to the contrary, any chartered county may regulate and license for-hire passenger motor vehicles in the unincorporated area of the county and in those municipalities that do not regulate such vehicles on July 1, 1974, or that do not adopt regulations at least as strict as those initially adopted by the county, by filing with the Public Service Commission a written resolution that the county will be assuming regulatory jurisdiction of for-hire passenger motor vehicles throughout said county. Said resolution shall not become effective sooner than 90 days from the date the resolution is received by the commission. When said date arrives, the county that has filed its intent to regulate and license shall have exclusive jurisdiction to regulate and license for-hire passenger motor vehicles in the unincorporated area of said county and those municipalities specified above, and no other body shall have jurisdiction to regulate and license such for-hire passenger motor vehicles in such areas. This subsection shall be authority for the chartered counties of the state, solely within the areas herein defined and upon the election set forth herein, to exercise all powers and functions of regulation, including, but not limited to, permits, areas of operation, rates and charges, inspection, and any other powers presently held by the Public Service Commission. Any chartered county making the election set forth herein shall adopt by ordinance, after holding public hearings, a complete set of rules and regulations which shall apply to all regulatory aspects within the areas herein defined.
[4] § 323.052(3), Fla.Stats., reads as follows:

(3) Any municipality regulating and licensing for-hire passenger motor vehicles on July 1, 1974, shall retain all its existing powers under this chapter ... unless such authority is transferred to the county by a majority vote of the governing body of the municipality.
[5] SECTION 11. Dade County, home rule charter.-(1) The electors of Dade County, Florida, are granted power to adopt, revise, and amend from time to time a home rule charter of government for Dade County, Florida, under which the Board of County Commissioners of Dade County shall be the governing body. This charter:

* * * * * *
(d) May provide a method by which any and all of the functions or powers of any municipal corporation or other governmental unit in Dade County may be transferred to the Board of County Commissioners of Dade County.
[6] Art. VIII, § 11(5), Fla. Const. (1885), which reads as follows:

(5) Nothing in this section shall limit or restrict the power of the Legislature to enact general laws which shall relate to Dade County and any other one or more counties in the state of Florida or to any municipality in Dade County and any other one or more municipalities of the State of Florida, and the home rule charter provided for therein shall not conflict with any provision of this Constitution nor of any applicable general laws non applying to Dade County and any other one or more counties of the State of Florida except as expressly authorized in this section nor shall any ordinance enacted in pursuance to said home rule charter conflict with this Constitution or any such applicable general law except as expressly authorized herein, nor shall the charter of any municipality in Dade County conflict with this Constitution or any such applicable general law except as expressly authorized herein, provided however that said charter and said ordinances enacted in pursuance thereof may conflict with, modify or nullify any existing local, special or general law applicable only to Dade County. (emphasis supplied)
[7] See also Dade County v. Acme Specialty Corp., 292 So.2d 378 (Fla. 3d DCA 1974), in which that court, without discussing the county's home rule powers, struck down a county ordinance prohibiting the sale of sparklers when such sale was permitted by statute.
[8] Buckress Land Co. v. Metropolitan Dade County, 232 So.2d 384 (Fla. 1970); Dade County v. Kelly, 153 So.2d 822 (Fla. 1963); In re Advisory Opinion to the Governor, 116 So.2d 425 (Fla. 1959); Miami Shores Village v. Cowart, 108 So.2d 468 (Fla. 1958); Dade County v. Young Democratic Club of Dade County, 104 So.2d 636 (Fla. 1958); City of Sweetwater v. Dade County, 343 So.2d 953 (Fla. 3d DCA 1977); Jordan Chapel Freewill Baptist Church v. Dade County, 334 So.2d 661 (Fla. 3d DCA 1976); City of North Miami Beach v. Metropolitan Dade County, 317 So.2d 110 (Fla. 3d DCA 1975); State ex rel. Lehman v. Buchanan, 190 So.2d 594 (Fla. 3d DCA 1966); Carol City Utils., Inc. v. Dade County, 183 So.2d 227 (Fla. 3d DCA 1966); City of Miami v. Benitez, 116 So.2d 463 (Fla. 3d DCA 1959). See also In re Advisory Opinion of the Governor, 313 So.2d 697 (Fla. 1975) (recognizing that, although the Dade County Commission has the power to fill vacant offices, the governor has the power to fill offices during a period of suspension).
[9] Art. VIII, § 11(7), Fla. Const. (1885), which reads as follows:

(7) Nothing in this section shall be construed to limit or restrict the power and jurisdiction of the Railroad and Public Utilities Commission or of any other state agency, bureau or commission now or hereafter provided for in this Constitution or by general law and said state agencies, bureaus and commissions shall have the same powers in Dade County as shall be conferred upon them in regard to other counties.
[10] Art. VIII, § 11(5), Fla. Const. (1885).
[11] Art. VIII, § 11(9), Fla. Const. (1885).
[12] Art. VIII, § 11(6), Fla. Const. (1885).
[13] Ch. 76-168, § 3, Laws of Fla., as amended by ch. 77-457, § 1, Laws of Fla., repealed ch. 323, Fla. Stat., in its entirety, effective July 1, 1980. Thus, § 323.052(3) was of no force and effect on the original publication date of this opinion. In its motion for rehearing, Dade County contends that lack of conflict (due to the repeal of ch. 323) on the date of publication requires our approval of the ordinance in question. The ordinance, however, was invalid as to Miami and Miami Beach when passed. Repeal of a statute does not validate an ordinance which is void at its inception.