674 So.2d 106 (1996)
Diane S. HASSEN, et al., Petitioners,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.
No. 85300.
Supreme Court of Florida.
March 7, 1996.
Rehearing Denied May 20, 1996.
*107 Dianna L. Myers of Perenich, Carroll, Perenich, Avril & Caulfield, P.A., Clearwater, for Petitioners.
H. Shelton Philips of Kaleel & Kaleel, P.A., St. Petersburg, for Respondent.
Roy D. Wasson, Miami; and Barbara Green, Coral Gables, for The Academy of Florida Trial Lawyers, Amicus Curiae.
George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Florida Farm Bureau Casualty Insurance Company, Amicus Curiae.
KOGAN, Justice.
We have for review State Farm Mutual Automobile Ins. Co. v. Hassen, 650 So.2d 128 (Fla. 2d DCA 1995), wherein the Second District Court of Appeal held section 627.727(6), Florida Statutes (Supp.1992), unconstitutional and certified the following question to be of great public importance:
IS SECTION 627.727(6), FLORIDA STATUTES (SUPP.1992), CONSTITUTIONAL? IF SO, IS IT A SUBSTANTIVE STATUTE, AS OPPOSED TO A REMEDIAL STATUTE, SUCH THAT ITS TERMS CANNOT BE APPLIED CONSTITUTIONALLY TO A PENDING CLAIM BROUGHT UNDER THE UNINSURED MOTORIST PROVISIONS OF AN AUTOMOBILE INSURANCE POLICY ISSUED PRIOR TO ITS EFFECTIVE DATE?
650 So.2d at 141-42. We have jurisdiction. Art. V, § 3(b)(1), (4), Fla. Const. For the reasons expressed below, we decline to answer the certified question. Rather, we hold that section 627.727(6), Florida Statutes (Supp.1992), should not be applied, as it was here, to a claim brought under the underinsured motorist provisions of an automobile insurance policy issued prior to that statute's effective date.
This case comes to us in the following context. On June 15, 1990, Diane Hassen was injured in an automobile accident that occurred as the result of the alleged negligence of an underinsured driver. At the time of the accident, State Farm Mutual Automobile Insurance Company (State Farm) insured Hassen and her husband under an automobile insurance policy with an effective date of March 26, 1990. The policy provided "stacked" uninsured motorist (UM) benefits of $200,000.
The automobile driven by the other driver was insured through UniSun Insurance Company with a policy providing liability limits of $100,000. UniSun offered to settle the Hassens' claim for the full amount of the policy limits. The Hassens accepted the offer subject to State Farm's approval. The Hassens sent State Farm a certified letter formally notifying it of UniSun's offer and requesting authorization to accept it. The letter further stated "[s]hould [State Farm] choose to preserve its subrogation right by refusing permission to settle, kindly forward a check in the amount of $100,000.00." State Farm questioned whether the value of the Hassens' third-party claim was worth UniSun's policy limits. State Farm also stated that it would not make a decision on authorization to settle until it heard from the owner of the other vehicle, who it had reason to believe might have sufficient assets to contribute to a settlement or to satisfy State Farm's subrogation claim. The record does not reflect *108 whether the owner ever responded to State Farm's inquiry.
State Farm did, however, offer to settle the Hassens' uninsured motorist claim for $50,000 but without waiving its subrogation rights. Thus, State Farm ultimately denied permission to settle, refused to waive its subrogation rights, and declined to pay the sum previously offered by UniSun.
Over State Farm's objection, the Hassens accepted UniSun's $100,000 settlement offer and executed a full release in favor of the tortfeasors. The Hassens later demanded coverage from State Farm under the uninsured motorist provisions of their policy. When State Farm denied coverage citing the unauthorized settlement, the Hassens sought a declaration of their rights under the policy.
The trial court entered a partial final summary judgment in favor of the Hassens. The court determined that the Hassens were entitled to underinsured motorist coverage under the State Farm policy. The trial court ruled that section 627.727(6), Florida Statutes (Supp.1992), which became effective October 1, 1992,[1] was a "remedial/procedural statute and applie[d], therefore, to claims for uninsured motorist benefits and policies of insurance issued before its effective date." The trial court found that the Hassens complied with the statute by giving State Farm "ample notice and opportunity to tender the sum offered by the tortfeasors in order to retain subrogation rights" and that State Farm "failed to timely waive subrogation or tender the amount of the written offer." Thus, under the 1992 statute, the Hassens were free to settle and release the tortfeasors without prejudice to their claim for underinsured motorist benefits from State Farm.
On appeal, the district court reversed. The district court held that, as applied in this caseto a pending claim brought under the uninsured motorist provisions of a policy executed prior to the statute's effective date the 1992 statute unconstitutionally impaired the obligation of contract in violation of article I, section 10 of the Florida Constitution. 650 So.2d at 134. The court further held that the 1992 statute violates an uninsured motorist carrier's 1) right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and by article I, section 9 of the Florida Constitution; and 2) right of access to the courts as protected by article I, section 21 of the Florida Constitution. Id. at 139. The district court then certified the above question for our consideration.
Although we decline to answer the certified question as phrased by the district court, we approve the result reached below. Our resolution of this case is based on our determination that the 1992 amendment to section 627.727(6) substantially changes the law governing an underinsured motorist carrier's right to subrogation and therefore must be applied prospectively in light of the complete absence of a legislative statement to the contrary.
It is a well established rule of statutory construction that, in the absence of an express legislative statement to the contrary, an enactment that affects substantive rights or creates new obligations or liabilities is presumed to apply prospectively. Arrow Air, Inc. v. Walsh, 645 So.2d 422, 425 (Fla. 1994). This Court will not divine an intent that a new law be applied to disturb existing contractual rights or duties when there is no express indication that such is the legislature's intent. Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239, 243 (Fla.1977). Consistent with these rules of construction, it is generally accepted that the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract. See Lumbermens Mutual Casualty Co. v. Ceballos, 440 So.2d 612, 613 (Fla. 3d DCA 1983), and cases cited therein. We cannot agree with the trial court that the 1992 amendment at issue here is a "remedial/procedural" change in the law which falls outside these well established rules. A review of the 1992 and 1989 versions of the statute illustrates that substantive rights and obligations are affected by the amendment.
Under the 1992 version of subsection (6), which the trial court held to apply here, an *109 underinsured motorist carrier has thirty days from receipt of written notice of a proposed settlement with an underinsured motorist's liability insurer to consider authorization of the settlement or retention of its subrogation rights. § 627.727(6)(a), Fla.Stat. (Supp. 1992). If the UM carrier chooses to preserve its subrogation rights by refusing permission to settle, it has thirty days after receipt of the notice to pay its insured the amount of the settlement offer. Id. § 627.727(6)(b). After final resolution of the underinsured motorist claim, the UM carrier then may seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the UM carrier's insured. Id. If the carrier authorizes settlement or fails to respond to the settlement request within the thirty-day period, its insured is free to settle the claim and release from liability the underinsured motorist and the motorist's liability insurer without prejudice to any claim against the UM carrier. Id. § 627.727(6)(a).
We turn now to the version of the statute that was in effect at the time the Hassens' policy was issued. Under the 1989 version of section 627.727(6), State Farm had thirty days from receipt of notice of a settlement offer to approve the settlement, waive its subrogation rights, authorize a full release, and agree to arbitrate the underinsured motorist claim. If it did not act within the thirty-day period, the only consequence State Farm faced was a lawsuit against it and the underinsured motorist "to resolve their respective liabilities for any damages to be awarded" the Hassens. § 627.727(6), Fla. Stat. (1989). If State Farm chose to preserve its subrogation rights by refusing to approve a settlement offer, the 1989 statute placed no prepayment obligation on State Farm in order to preserve those rights. The parties incorporated language mirroring the relevant provisions of the 1989 statute into their contract of insurance. Thus, prior to the 1992 amendment, it was clear that State Farm had no obligation to pay the Hassens the amount of any settlement offer it refused to approve in order to preserve its subrogation rights.
As recognized by the district court, it is clear that the 1992 amendment "imposes a new obligation on State Farm, not found in the 1989 version or in its contract, requiring it to pay the amount of UniSun's settlement offer to the Hassens before it is entitled to preserve its long-recognized legal right to subrogation." 650 So.2d at 135. We agree that this change, along with others outlined in the district court opinion, "substantially alters the landscape of uninsured motorist law" and therefore must be considered a substantive amendment that is presumed to operate prospectively. Id. at 139; accord Gupton v. Village Key & Saw Shop, Inc., 656 So.2d 475 (Fla.1995) (holding amendment that made substantial change in the law governing non-compete agreements must be applied prospectively).
We can find no clear evidence of a legislative intent sufficient to rebut the presumption against retroactive application. There is no clear statement of such intent in either the 1992 statute or in its enacting legislation. In fact, a review of chapter 92-318, Laws of Florida, supports the conclusion that the legislature intended the amendment to subsection (6) to be applied prospectively only. As noted by the district court, the legislature clearly expressed its intent regarding the effective date of the act amending section 627.727 by providing "[e]xcept as otherwise provided herein, this act shall take effect October 1, 1992." Ch. 92-318, § 17 (sic), at 3178, Laws of Fla. There is nothing in the enacting legislation that evinces an intent that the amendment to subsection (6) be applied retrospectively. Whereas, the legislature clearly expressed its intent that the amendment creating subsection (10) of the statute was a remedial amendment that was to be given retrospective effect. Ch. 92-318, § 80, at 3151, Laws of Fla. We agree with the district court that if the legislature had intended the amendment to subsection (6) to be applied retroactively, it would have so stated, as it did in connection with subsection (10).[2] 650 So.2d at 134. Moreover, the conclusion *110 that the amendment at issue here was intended to be a substantive rather than a remedial change in the law is further supported by the title to chapter 92-318, which reads in pertinent part "[a]n act relating to insurance; ... amending s. 627.727, F.S.;... revising provisions with respect to subrogation rights of underinsured motorist insurers." Ch. 92-318, at 3081-84, Laws of Fla. Parker v. State, 406 So.2d 1089, 1092 (Fla. 1981) (recognizing that title of enacting legislation is one indicator of legislative intent).
We also agree with the district court that the legislature likely amended subsection (6) in order "to address the situation in which an injured party was denied immediate access to needed compensation from a tortfeasor's liability carrier because the injured party's uninsured motorist carrier refused to approve a settlement offer and waive its subrogation rights." 650 So.2d 128. The legislature sought to accomplish this goal by shifting the financial burden from the injured party to the underinsured motorist carrier by requiring the carrier to pay its insured the full amount of any settlement offer by the tortfeasor's liability carrier, without the need for a determination of liability, in order to preserve subrogation rights. Id. However, while the purpose of the 1992 amendment likely would be furthered by retroactive application, we have explained that such vindication cannot serve to rebut the presumption against retroactive application. Arrow Air, 645 So.2d at 425.
Because we construe the 1992 amendment to apply prospectively only and thus not to apply in this case, we decline to address the constitutional questions certified by the district court.[3]Accord Arrow Air, 645 So.2d at 425 n. 8 (declining to address due process claim where Court construed statute not to apply in that case). Accordingly, we approve the result reached by the district court and remand for further proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Ch. 92-318, § 17 [sic], at 3178, Laws of Fla.
[2] Notably, we recently held that, notwithstanding the legislature's express statement that subsection (10) is remedial and is to be applied retroactively, the statute cannot be applied retroactively because it is a penalty. State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995).
[3] The issue of impairment of contracts is mooted by our holding that the 1992 amendment applies prospectively only. Because we are not presented with the prospective application of the amendment in this case and the constitutional questions raised in connection with prospective application of the amendment do not appear to have been fully addressed in the trial court, those challenges to the statute are better left to a future case.