737 So.2d 494 (1999)
METROPOLITAN DADE COUNTY, Petitioner,
v.
CHASE FEDERAL HOUSING CORPORATION, et al.
No. 92,536.
Supreme Court of Florida.
June 10, 1999.
Rehearing Denied August 4, 1999.
*495 Robert A. Ginsburg, Dade County Attorney, and Robert A. Duvall and Thomas H. Robertson, Assistant County Attorneys, Miami, Florida, for Petitioner.
*496 Robert M. Brochin and David Ashton of Morgan, Lewis & Bockius, LLP, Miami, Florida, on behalf of Chase Federal Housing Corp., and Douglas M. Halsey, Kirk L. Burns and Evan M. Goldenberg of Halsey & Burns, P.A., Miami, Florida, on behalf of Suniland Associates, Respondents.
PARIENTE, J.
We have for review Metropolitan Dade County v. Chase Federal Housing Corp., 705 So.2d 674 (Fla. 3d DCA 1998), a decision certifying the following question to be one of great public importance:
ARE SUBSECTIONS 376.3078(3) AND 376.3078(9), FLORIDA STATUTES (1995), [OF THE DRY CLEANING CONTAMINATION CLEANUP ACT,] WHICH PROVIDE TO ELIGIBLE ENTITIES CONDITIONAL IMMUNITY FROM CERTAIN ADMINISTRATIVE AND JUDICIAL ACTIONS BY STATE AND LOCAL GOVERNMENTS AND AGENCIES, INTENDED BY THE LEGISLATURE TO APPLY RETROACTIVELY, THUS PRECLUDING ACTIONS AGAINST IMMUNIZED ENTITIES FOR THE RECOVERY BY A GOVERNMENT FOR ENFORCEMENT AND REHABILITATION COSTS EXPENDED PRIOR TO THE ENACTMENT OF THESE SUBSECTIONS?
Id. at 675. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question in the affirmative.

BACKGROUND
The defendants below, Suniland Associates and Chase Federal Housing Corporation, owned shopping centers along U.S. 1 (South Dixie Highway) in the Suniland area of Dade County. Both defendants leased space in their shopping center to operators of dry cleaning facilities, but neither defendant had owned or operated a dry cleaning facility or had any knowledge of any contamination from dry cleaning solvents occurring on their property.
In 1991, the Department of Environmental Resources Management of Metropolitan Dade County issued Suniland Associates an emergency order to correct a sanitary nuisance in accordance with provisions of the Dade County Code. The emergency order directed Suniland Associates to eliminate dry cleaning solvent contamination discovered in a storm drain and septic tank on its property.
Suniland Associates, at its own expense, conducted environmental assessments, installed a groundwater treatment facility, and pumped the contaminants from the septic tank and storm drain. Suniland Associates expended $450,000 in order to remove the contamination from the property. The dry cleaning facility in the shopping center owned by Suniland Associates ceased operations in 1992. No dry cleaning facility has been in operation on the property since that time.
The County also issued an emergency order to Chase Federal in 1992 after contamination from dry cleaning solvents was discovered in a storm drain in its shopping center. Chase Federal, also at its own expense, conducted environmental assessments and installed a groundwater treatment system in response to the emergency order. Chase Federal expended over $100,000 during its efforts to remove the contamination from its property. Chase states that in reliance on subsections 376.3078(3) and (9) of the Dry Cleaning Contamination Cleanup Act, it did not complete the rehabilitation of the contamination and is presently seeking to complete rehabilitation under those provisions of the Act.
In December 1994, the County, a political subdivision of the State of Florida, filed suit against defendants and other owners and operators of dry cleaning facilities in the Suniland area. The lawsuit alleged that dry cleaning solvents had contaminated the private wells in a residential neighborhood near the dry cleaning facilities. *497 As a result, the County alleged that it had expended considerable sums investigating the contamination and installing and servicing potable water mains to connect the neighborhood to the public water supply.[1] The amended complaint additionally alleged that "contamination continues to exist in the groundwater, and will continue to remain in the groundwater" unless addressed by the defendants and others.
The County's claims for relief were based on Chapter 24 of the Dade County Code, which imposes strict liability for damage caused by pollution. The amended complaint included counts for injunctive relief to compel rehabilitation, damages, civil penalties, attorneys' fees and administrative costs. In addition to seeking to recover the costs expended in removing the contamination from the water supply, the amended complaint also sought an injunction to compel the containment of on-site and off-site contamination.
Defendants moved for summary judgment, claiming immunity from suit by the County based on the immunity provisions found in section 376.3078, Florida Statutes (1995), of the Dry Cleaning Contamination Cleanup Act. The Legislature enacted section 376.3078 in 1994, prior to the filing of the County's lawsuit, as part of a comprehensive statewide program for the elimination of contamination previously and presently caused by the discharge of dry-cleaning solvents. See ch. 94-355, Laws of Fla. In conjunction with the statewide program, the Legislature established a fund to clean sites contaminated by dry cleaning solvents.[2]
The Act provides that the owners or operators of dry cleaning establishments, who could be liable as a result of contamination from dry cleaning solvents, would be eligible to apply to pay a deductible and have the contaminated sites cleaned by the State. See § 376.3078, Fla. Stat. (Supp. 1994). In 1995, real property owners were added to the list of those eligible to participate in the program. See § 376.3078(3), Fla. Stat. (1995). In return for disclosure of dry cleaning contamination and participation in the program, section 376.3078(3) provides conditional immunity for eligible real property owners and owners of dry cleaning facilities:
(3) REHABILITATION LIABILITY.In accordance with the eligibility provisions of this section, no real property owner or no person who owns or operates, or who otherwise could be liable as a result of the operation of, a drycleaning facility ... shall be subject to administrative or judicial action brought by or on behalf of any state or local government or agency thereof or by or on behalf of any person to compel rehabilitation or pay for the costs of rehabilitation of environmental contamination resulting from the discharge of drycleaning solvents. Subject to the delays that may occur as a result of the prioritization of sites this section for any qualified site, costs [of rehabilitation] shall be absorbed at the expense of the drycleaning facility restoration funds, without recourse to reimbursement or recovery from the real property owner or the owner or operator of the drycleaning facility....
(Emphasis supplied.)
An entity can become eligible to participate in the program "regardless of when *498 the drycleaning contamination was discovered," provided the dry cleaning facility has not been operated in a grossly negligent manner at any time after November 1980, and provided the entity registers with the Department of Environmental Protection (DEP), complies with DEP rules, and obtains third-party liability insurance.[3] § 376.3078(3)(a). In order to be eligible to participate in the program, entities must have discovered and reported the dry cleaning contamination to the DEP before December 31, 1998.[4]See §§ 376.3078(3)(a)5., .3078(3)(b)4., Fla. Stat. (Supp.1998).
In March 1996, shortly after DEP promulgated rules to determine eligibility, defendants applied to participate in the statewide program. In June and July of 1996, DEP determined that defendants were eligible to participate in the program. DEP provided the County with notice of its right to appeal the determination of eligibility, but the County did not do so.
In its motion for summary judgment, Suniland Associates also claimed immunity based on subsection 376.3078(9), Florida Statutes (1995).[5] This subsection provides an additional immunity provision for real property owners who voluntarily cleaned up their contaminated property:
(9) A real property owner is authorized to conduct site rehabilitation activities at any time pursuant to department rules ... whether or not the facility has been determined by the department to be eligible for the drycleaning solvent cleanup program. A real property owner or any other party that conducts site rehabilitation may not seek cost recovery from the department.... A real property owner that voluntarily conducts such site rehabilitation, whether commenced before or on or after October 1, 1995, shall be immune from liability to any person, state or local government, or agency thereof to compel or enjoin site rehabilitation or pay for the cost of rehabilitation of environmental contamination, or to pay any fines or penalties regarding rehabilitation....
§ 376.3078(9), Fla. Stat. (1995) (emphasis supplied).[6]
The trial court granted both defendants' motions for summary judgment on the basis of statutory immunity provided by subsection 376.3078(3) and determined that Suniland Associates was additionally immune from suit pursuant to subsection 376.3078(9). On appeal, the Third District concluded that the Legislature had clearly expressed its intent to retroactively apply the provisions of the statute because of the comprehensive nature of the Act, the fact that the statute applied to contamination that occurred prior to its enactment, and the absence of a savings clause. See Chase Federal Housing Corp., 705 So.2d at 676. The Third District made no distinction between the immunity provisions of subsection 376.3078(3) and those of subsection 376.3078(9). See id.
*499 In its argument to this Court, the County does not contest that the defendants became eligible for conditional immunity under subsection 376.3078(3). In addition, the County does not dispute that the Act was intended to address and remedy dry cleaning contamination that occurred before the Act was passed. Rather, the County argues that the Act was not intended to retrospectively bar its cause of action to recover costs of rehabilitation that had already been expended before the effective date of the Act and before the defendants' eligibility for immunity was determined.[7]

ANALYSIS
Two interrelated inquiries arise when determining whether statutes should be retroactively applied. The first inquiry is one of statutory construction: whether there is clear evidence of legislative intent to apply the statute retrospectively. See Landgraf v. USI Film Prods., 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); Hassen v. State Farm Mut. Auto. Ins. Co., 674 So.2d 106, 108 (Fla.1996). If the legislation clearly expresses an intent that it apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible. See State Farm Mut. Auto. Ins. v. Laforet, 658 So.2d 55, 61 (Fla.1995); State Dep't of Transp. v. Knowles, 402 So.2d 1155, 1158 (Fla.1981); see also Arrow Air, Inc. v. Walsh, 645 So.2d 422, 425 n. 8 (Fla.1994).
At the outset, it should be noted that: "A statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment.... Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 269-70, 114 S.Ct. 1483; see also Charles B. Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L.Rev. 692, 692 (1960) ("A retroactive statute is one which gives to preenactment conduct a different legal effect from that which it would have had without the passage of the statute."). The general rule is that in the absence of clear legislative intent to the contrary, a law affecting substantive rights, liabilities and duties is presumed to apply prospectively. See Hassen, 674 So.2d at 108; Arrow Air, 645 So.2d at 425. Thus, if a statute attaches new legal consequences to events completed before its enactment, the courts will not apply the statute to pending cases, absent clear legislative intent favoring retroactive application. See Landgraf, 511 U.S. at 270, 114 S.Ct. 1483; Arrow Air, 645 So.2d at 425.
The policy rationale behind this rule of construction is that the retroactive operation of statutes can be harsh and implicate due process concerns. See, e.g., Arrow Air, 645 So.2d at 425; Knowles, 402 So.2d at 1158. We have reasoned that "[r]equiring clear intent assures that [the legislature] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." Arrow Air, 645 So.2d at 425 (quoting Landgraf, 511 U.S. at 272-73, 114 S.Ct. 1483); see Fleeman v. Case, 342 So.2d 815, 817-18 (Fla.1976).[8] However, *500 "[r]etroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes ... or simply to give comprehensive effect to a new law" the legislature considers salutary. Landgraf 511 U.S. at 267-68, 114 S.Ct. 1483 (emphasis supplied).[9]
It must be kept in mind that the presumption against retroactivity is only a default rule of statutory construction. The essential purpose of statutory construction is to determine legislative intent. See City of Boca Raton v. Gidman, 440 So.2d 1277, 1281 (Fla.1983); State v. Sullivan, 95 Fla. 191, 207, 116 So. 255, 261 (1928). Thus, the presumption is rebutted by clear evidence of legislative intent. See Arrow Air, 645 So.2d at 425. Of course, where the language of a statute contains an express command that the statute is retroactive, there is no need to resort to these canons of statutory construction. See Landgraf, 511 U.S. at 280, 114 S.Ct. 1483; Acosta v. Richter, 671 So.2d 149, 153 (Fla.1996).
In order to determine legislative intent as to retroactivity, both the terms of the statute and the purpose of the enactment must be considered. See State ex rel. Hill v. Cone, 140 Fla. 1, 17, 191 So. 50, 57 (1939); see also United States v. Olin Corp., 107 F.3d 1506, 1513-14 (11th Cir. 1997) (reviewing language, structure purpose, and legislative history to find that Congress clearly intended that liability under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) be imposed retroactively on former owners of contaminated sites); Hassen, 674 So.2d at 109. However, the mere fact that "retroactive application of a new statute would vindicate its purpose more fully ... is not sufficient to rebut the presumption against retroactivity." Landgraf, 511 U.S. at 285-86, 114 S.Ct. 1483; see Hassen, 674 So.2d at 110; Arrow Air, 645 So.2d at 425.
Because subsections 376.3078(3) and (9) provide conditional immunity from liability for contamination occurring before the statute's enactment, the immunity provisions operate retroactively. The County has conceded that once a defendant qualifies for eligibility under subsection 376.3078(3), the Act would prevent recovery of costs subsequently expended, even though those costs related to contamination occurring prior to the statute's enactment.[10] Thus, the County has, in effect, conceded that the Act may be retroactively applied. However, the County urges a *501 more restrictive application of the immunity provisions so that eligible defendants would only be immunized for costs expended by government after the date eligibility was determined. Therefore, our task is to determine the extent of the statute's retroactive reach.
Under the County's interpretation, if the costs had already been expended before the determination of eligibility, an otherwise eligible owner or operator would not be entitled to immunity. In contrast, if the damage had occurred but the costs had not yet been expended at the time eligibility was determined, the owner or operator would be entitled to immunity, even though in both cases the contamination preceded the effective date of the Act. We conclude that to interpret the Act in the manner advocated by the County would result in our rewriting the Act.
We turn first to the purpose of the Act. The Legislature found that:
(c) Where contamination of the groundwater or surface water has occurred, remedial measures have often been delayed for long periods while determinations as to liability and the extent of liability are made, and such delays result in the continuation and intensification of the threat to the public health, safety, and welfare; in greater damage to the environment; and in significantly higher costs to contain and remove the contamination.
§ 376.3078(1)(c), Fla. Stat. (Supp.1994). Therefore, the legislative purpose was to create a comprehensive scheme to eliminate the ongoing threat to Florida's groundwater caused by past and presently occurring dry cleaning contamination.
We turn next to the language of the Act and an overview of the statutory scheme. In return for participating in the program, entities eligible under subsection 376.3078(3) receive the right to have rehabilitation activities funded from the trust fund, as well as immunity from suit to compel performance of site rehabilitation or to compel payment of the costs of rehabilitation. The owners or operators of an operating dry cleaning business can become eligible to participate in the program "regardless of when the drycleaning contamination was discovered." § 376.3078(3)(a), Fla. Stat. (1995) (emphasis supplied). Entities applying to participate in the program will be ineligible if the discharge of drycleaning solvents has been willfully concealed from the Department or the dry cleaning facility was operated in a grossly negligent manner. See id.
Even if the dry cleaning business is no longer in operation, the owners or operators are still eligible to participate in the program "regardless of when the contamination was discovered," as long as the business was operated in compliance with state and federal regulations. § 376.3078(3)(b). As with the facilities currently being operated, the owners or operators of the former businesses will be ineligible for participation if the dry cleaning contamination has been willfully concealed from the Department or the dry cleaning business was operated in a grossly negligent manner. See id.
The statutory language clearly and unequivocally provides that, upon being determined eligible to participate in the program, an entity "shall" not be "subject to administrative or judicial action brought by or on behalf of any state or local government or agency thereof or by or on behalf of any person to compel rehabilitation or pay for the costs of rehabilitation of environmental contamination resulting from the discharge of drycleaning solvents," § 376.3078(3) (emphasis supplied), "regardless of when the drycleaning contamination was discovered." § 376.3078(3)(a) (emphasis supplied). Thus, the clear statutory language provides that after DEP determines that the defendants are eligible to participate in the program, they are granted immunity from actions from local governments to recover the costs of rehabilitation. See § 376.3078(3). As noted above, the County *502 does not challenge that eligibility determination. Therefore, the language of subsection 376.3078(3) rebuts the presumption in favor of prospective application and provides a clear expression of legislative intent that the conditional immunity applies retroactively to immunize defendants from actions to recover costs of rehabilitation expended prior to the passage of the Act.
Further, the language of subsection 376.3078(9), granting immunity to real property owners who voluntarily cleaned the contamination on their property, contains an express command that the provision provides conditional immunity for past acts. The section 376.3078(9) immunity applies to voluntary clean-ups "commenced before or on or after October 1, 1995," the effective date of the amendment. The express language of this provision explicitly immunizes real property owners from liability for costs expended to clean real property before the Act's effective date.
The County's interpretation of these subsections, that they grant an entity immunity only from costs expended after eligibility was determined, would require that we rewrite the express terms of the statute and add phrases that do not appear within the text. Specifically, we would have to add to subsection 376.3078(3) that the immunity would be granted only from actions to recover costs expended after the eligibility was determined.
The County asserts that the inclusion of an effective date rebuts any interpretation in favor of retroactivity, relying on Hassen, 674 So.2d at 109. In Hassen, this Court compared two provisions in the same statute, one expressly stating that it was to be retroactively applied and the other silent as to its forward or backward reach except for an effective date. Id. In that case, we found that the Legislature had not clearly expressed its intent that the provision applied retroactively, especially when juxtaposed against other provisions of the statute. See id. We reject an interpretation of Hassen that leads to the unbending principle that the inclusion of an effective date in a statute will always supersede the clearly expressed legislative intent that the statute be applied retroactively.[11]
Unlike the provision in Hassen, section 376.3078 is not silent as to its retroactive effect. As to subsection 376.3078(9), although that provision became effective October 1, 1995, the text of subsection 376.3078(9) specifically states that whether the voluntary clean-up commenced before or after October 1, 1995, the real property owner "shall be immune from liability." The County's interpretation would require us to disregard the clear language of the Act.
As to subsection 376.3078(3), the inclusion of an effective date comports with the overall intent of the Act to provide for conditional immunity for past acts, but only after eligibility has been determined. The Act directs the Department to promulgate rules to determine the criteria for eligibility and to prioritize the rehabilitation of eligible sites before any entities can be afforded statutory immunity. See § 376.3078(3)(a)1. Therefore, only after the effective date could entities apply to become eligible to receive statutory immunity for past contamination "regardless of when the drycleaning contamination was discovered." § 376.3078(3)(a).
Although not dispositive of our decision in this case, in 1998 the Legislature further amended the Act to provide:
(e) It is the intent of the Legislature to encourage real property owners to undertake the voluntary cleanup of property contaminated with drycleaning solvents and that the immunity provisions of this section and all other available defenses be construed in favor of real property owners.
*503 § 376.3078(1)(e), Fla. Stat. (Supp.1998). This Court has recognized that when "an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof." Lowry v. Parole & Probation Comm'n, 473 So.2d 1248, 1250 (Fla.1985) (emphasis supplied); see Finley v. Scott, 707 So.2d 1112, 1116 (Fla.1998). The Third District's opinion in this case was issued on January 3, 1998, see Chase Federal Housing Corp., 705 So.2d at 674, five months before the Legislature passed this law in May 1998. See ch. 98-189, § 18, at 1670, Laws of Fla. (codified at § 376.3078(1)(e), Fla. Stat. (Supp.1998)). Therefore, this amendment can be reasonably read as clarifying the legislative intent that the immunity provisions of the Act be construed in favor of real property owners.
We thus agree with the Third District that a consideration of both the express terms of the Act and its purpose leads to the conclusion that the Legislature intended the immunity provisions to protect entities from suits to recover the costs of rehabilitation, even if those costs were expended before the Act went into effect, as long as entities meet the qualifying requirements for eligibility. The Legislature evaluated the goal of decreasing the delay involved in rehabilitating sites contaminated by dry cleaning solvents and determined that this goal would best be accomplished by replacing civil or administrative enforcement with a legislative program whereby owners or operators of dry cleaning facilities agreed to rehabilitate the sites in accordance with the Department's rules. Thus, immunity from civil suit is granted to entities as a trade-off for disclosure of dry cleaning contamination and rehabilitation of the problem.[12]

WHETHER RETROACTIVE APPLICATION IS CONSTITUTIONALLY PERMISSIBLE IN THIS CASE
The second prong of the inquiry requires us to consider whether the Legislature acted within constitutionally acceptable parameters by eliminating the County's right to recover for costs it already expended:
A retrospective provision of a legislative act is not necessarily invalid. It is so only in those cases wherein vested rights are adversely affected or destroyed or when a new obligation or duty is created or imposed, or an additional disability is established, on connection with transactions or considerations previously had or expiated.
McCord v. Smith, 43 So.2d 704, 708-09 (Fla.1949); cf. Laforet, 658 So.2d at 61. Generally, due process considerations prevent the State from retroactively abolishing vested rights. See Knowles, 402 So.2d at 1158. Thus, retroactive abolition of substantive vested rights is prohibited by constitutional due process considerations. See Rupp v. Bryant, 417 So.2d 658, 665-66 (Fla.1982).
The plaintiff in this case, however, is a political subdivision of the State that brought an action under the authority of its county code to recover costs and impose a penalty. The Florida Constitution declares that Dade County's home rule powers are explicitly subject to the supremacy of general state law:
(6) Nothing in this section [defining Dade County's home rule power] shall be construed to limit or restrict the power of the Legislature to enact general laws which shall relate to Dade County and any other one or more counties of the state of Florida or to any municipality in Dade County and any other one or more municipalities of the State of Florida *504 relating to county or municipal affairs and all such general laws shall apply to Dade County and to all municipalities therein to the same extent as if this section had not been adopted and such general laws shall supersede any part or portion of the home rule charter provided for herein in conflict therewith and shall supersede any provision of any ordinance enacted pursuant to said charter and in conflict therewith, and shall supersede any provision of any charter of any municipality in Dade County in conflict therewith.
Art. VIII, § 11(6), Fla. Const. (1885) ("Home Rule Amendment"); see art. VIII, § 6(e), Fla. Const. (1968) (incorporating article VIII, section 11, Florida Constitution (1885)).
The Florida Constitution and general laws are "supreme" in Metropolitan Dade County, except as expressly provided in the Home Rule Amendment. Art. VIII, § 11(9), Fla. Const. (1885). The Home Rule Amendment must be "strictly construed" to maintain such supremacy. Metropolitan Dade County v. City of Miami, 396 So.2d 144, 148 (Fla.1980). Consequently, whenever "any doubt exists as to the extent of a power attempted to be exercised which may affect the operation of a state statute, the doubt is to be resolved against the ordinance and in favor of the statute." Rinzler v. Carson, 262 So.2d 661, 668 (Fla.1972); see Dade County v. Acme Specialty Corp., 292 So.2d 378, 378 n. 2 (Fla. 3d DCA 1974) ("County ordinances under [the] Home Rule Charter are to be treated the same as municipal ordinances."); Dade County Code § 24-2 (declaration that County Code must not be construed as "superseding or conflicting with" any state environmental laws).
Charter counties such as Metropolitan Dade County thus have no power to enforce regulatory ordinances which conflict with state law, unless the county's power to regulate that field is specifically authorized in the Home Rule Amendment. See, e.g., Metropolitan Dade County v. City of Miami, 396 So.2d 144, 148 (Fla. 1980); Kaulakis v. Boyd, 138 So.2d 505, 507 (Fla.1962); Sun Harbor Homeowners Ass'n v. Broward County Dep't of Natural Resource Protection, 700 So.2d 178, 180-81 (Fla. 4th DCA 1997). Whenever the legislature acts to supersede a local government's authority to enforce its ordinances, the effect is immediate and applies to both future and pending proceedings and present and past offenses. See State ex rel. Baker v. McCarthy, 122 Fla. 749, 166 So. 280 (1936) (subsequent conflicting state law renders prior ordinance void to extent of direct conflict); Sun Harbor, 700 So.2d at 180; see also Board of County Comm'rs v. Wilson, 386 So.2d 556, 561 (Fla.1980) (electors' rights under County's Home Rule Charter were ineffective and superseded by a subsequent conflicting general law). If political subdivisions were able to continue actions to enforce ordinances that conflict with general law, the political subdivisions would have the power to frustrate the ability of the Legislature to set policies for the state. See McCarthy, 166 So. at 282.
To the extent that the Legislature intended to comprehensively regulate the statewide problem of drycleaning contamination, the Legislature has the authority to prevent local government from acting contrary to that intent. Thus, the Dade County Code authorizing the action against defendants is in conflict with the Act in an area not specifically reserved to the County in the Home Rule Amendment. We conclude that after the defendants became immunized under the Act, the County no longer had the power to bring an action under the provisions of its County Code to recover the costs it expended in cleaning the dry cleaning contamination or to compel the defendants to clean the contamination.
Without making any sweeping statements concerning the distinction between the constitutional rights possessed by political subdivisions of the state as opposed *505 to private persons, it is the duty of this Court to enforce the constitutional limitations placed on the powers of political subdivisions. Cf. Neu v. Miami Herald Publ'g Co., 462 So.2d 821, 825 (Fla.1985). While not dispositive of the legal issues, we point out in this case that defendants expended hundreds of thousands of dollars to attempt to eliminate the dry cleaning contamination. Defendants further contest that they would even be responsible for the additional monies the County seeks to recover for connecting the adjacent neighborhood to the public water supply. We also note that the County did not seek to recover these costs or pursue a lawsuit against these entities until after chapter 376 was enacted. Lastly, we note that the County had an opportunity to appeal the DEP's determination of eligibility, but did not do so. Compare Metropolitan Dade County v. State Dep't of Envtl. Protection, 714 So.2d 512, 513-14 (Fla. 3d DCA 1998) (County appealed DEP determination that another entity was eligible to participate in the Drycleaning Contamination Cleanup Program).
However, as conceded by the defendants, we emphasize that a different result might well be reached if these immunity provisions were applied to abrogate the cause of action of a private plaintiff rather than a government entity's cause of action. See Rupp, 417 So.2d at 665-66. A statute may be applied to one class of cases, even though it may violate the Constitution when applied to another class of cases, without necessarily "destroy[ing] the statute." In re Seven Barrels of Wine, 79 Fla. 1, 17, 83 So. 627, 632 (1920).

CONCLUSION
We find that the Legislature has clearly expressed its intent through the language of the statute as well as the structure and purpose of the Act to apply the immunity provisions found in subsections 376.3078(3) and (9) to preclude the County's lawsuit to recover its rehabilitation costs. Granting this immunity for past actions does not render these subsections unconstitutional in this case. We answer the certified question in the affirmative and approve the decision of the Third District below.
It is so ordered.
HARDING, C.J., SHAW, WELLS and ANSTEAD, JJ., and OVERTON, Senior Justice, concur.
NOTES
[1] As noted in the Third District's opinion, the "record does not reflect whether the County charged the neighboring homeowners a fee for connecting the homes to the public water supply, thus passing on the expense to the consumer," opining that "[p]resumably the County ... is charging the residents for their water usage." Metropolitan Dade County v. Chase Fed. Housing Corp., 705 So.2d 674, 675 n. 1 (Fla. 3d DCA 1998).
[2] The sources of funding included a tax on the gross receipts of dry cleaning facilities, a tax on the production or importation of perchlorethylene used in dry cleaning, and registration fees imposed on the owners or operators of drycleaning facilities. See §§ 376.303(1)(d)2.a., .3078(2)(a), .70, .75, Fla. Stat. (Supp.1994).
[3] In 1995, the statute was amended so that all owners or operators of currently operating dry cleaning businesses must obtain third-party liability insurance in the amount of $1 million of coverage, regardless of participation in the program. See § 376.3078(8), Fla. Stat. (1995).
[4] Since the DEP did not promulgate rules to determine eligibility to participate in the program until March 1996, the window for eligible entities to apply to participate in the program was less than three years.
[5] This provision is now codified at 376.3078(11), Fla. Stat. (Supp.1998).
[6] Though not directly at issue in this case, the 1995 amendments also added a third immunity provision applicable to real property owners who are not involved in the ownership or operation of the dry cleaning facility. See § 376.3078(3)(o), Fla. Stat. (1995). Under this provision, real property owners are immune from suit to recover for contamination resulting from the gross negligence of the owner or operator of the facility if the contamination occurred prior to January 1, 1990. See id.
[7] As for the County's argument that the monies it seeks to recover do not represent rehabilitation costs, we do not address this argument because it has been raised for the first time in this Court and was neither raised in the trial court nor addressed by the Third District. Thus, this argument is not preserved for appellate review. See Dober v. Worrell, 401 So.2d 1322, 1323-24 (Fla.1981).
[8] Although defendants argue that the presumption against retroactivity should not apply because this case involves a governmental entity, it appears clear that the presumption against retroactivity is an established principle of statutory construction founded on notions of fairness and separation of powers concerns, rather than simply protecting the constitutional rights of the affected parties. See Landgraf v. USI Film Prods., 511 U.S. 244, 266-68, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); Arrow Air, Inc. v. Walsh, 645 So.2d 422, 425 (Fla.1994). Accordingly, the United States Supreme Court has applied this canon of construction to cases where only the rights of government entities were affected by retroactive application. See Landgraf, 511 U.S. at 271 n. 25, 114 S.Ct. 1483; United States v. Magnolia Petroleum Co., 276 U.S. 160, 162-63, 48 S.Ct. 236, 72 L.Ed. 509 (1928); White v. United States, 191 U.S. 545, 552, 24 S.Ct. 171, 48 L.Ed. 295 (1903).
[9] For this reason, this Court has stated that the presumption in favor of prospective application generally does not apply to "remedial" legislation; rather, whenever possible, such legislation should be applied to pending cases in order to fully effectuate the legislation's intended purpose. Arrow Air, 645 So.2d at 425. However, if a statute accomplishes a remedial purpose by creating new substantive rights or imposing new legal burdens, the presumption against retroactivity would still apply. See id. This Court has previously questioned this substantive-remedial dichotomy:

Despite formulations hinging on categories such as "vested rights" or "remedies," it has been suggested that the weighing process by which courts in fact decide whether to sustain the retroactive application of a statute involves three considerations: the strength of the public interest served by the statute, the extent to which the right affected is abrogated, and the nature of the right affected.
State Dep't of Transp. v. Knowles, 402 So.2d 1155, 1158 (Fla.1981), quoted in Department of Agric. & Consumer Servs. v. Bonanno, 568 So.2d 24, 30 (Fla.1990). However, the Knowles analysis has not been used recently by this Court when discussing retroactivity.
[10] To the extent that the County is seeking an injunction based on its assertion of continuing contamination in the groundwater, it is clear that subsection 376.3078(3), Florida Statutes (1995), would bar the County's request for prospective injunctive relief once eligibility is determined.
[11] If the Legislature fails to include an effective date in its legislation, then laws not vetoed by the governor will automatically go into effect sixty days following adjournment of the session. See art. III, § 9, Fla. Const.
[12] As for the County's argument that retroactive application of the immunity provisions encourages, rather than eliminates, delay in cleaning up contamination from dry cleaning solvents, it is not the role of this Court to assess the policies behind legislative enactments. See, e.g., State v. Ashley, 701 So.2d 338, 343 (Fla.1997).