579 So.2d 105 (1991)
FLORIDA POWER CORPORATION, Appellant,
v.
SEMINOLE COUNTY and City of Lake Mary, Appellees.
No. 76743.
Supreme Court of Florida.
May 2, 1991.
Alan C. Sundberg, Sylvia H. Walbolt, Robert Pass and F. Townsend Hawkes of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, and Albert H. Stephens and Pamela I. Smith, Office of the General Counsel, Florida Power Corp., St. Petersburg, for appellant.
Robert A. McMillan, Co. Atty. and Lonnie N. Groot, Asst. Co. Atty. for Seminole County, Sanford, and Davisson F. Dunlap, Jr. of Pennington, Wilkinson, Dunlap, Bateman & Camp, P.A., Tallahassee, and Ned N. Julian, Jr. of Stenstrom, McIntosh, Julian, Colbert, Whigham & Simmons, P.A., for Lake Mary, Sanford, for appellees.
G. Edison Holland, Jr. and Teresa E. Liles of Beggs & Lane, Pensacola, amicus curiae for Gulf Power Co.
Ron A. Adams of Steel, Hector & Davis, and Jean G. Howard, Florida Power & Light Co., Miami, amicus curiae for Florida Power & Light Co.
Lee L. Willis and James D. Beasley of Ausley, McMullen, McGehee, Carothers and Proctor, Tallahassee, amicus curiae for Tampa Elec. Co.
Harry Morrison, Jr., Gen. Counsel and Kraig A. Conn, Asst. Gen. Counsel, Tallahassee, amicus curiae for Florida League of Cities, Inc.
Susan F. Clark, Gen. Counsel and Richard Bellak, Associate Gen. Counsel, Tallahassee, amicus curiae for The Florida Public Service Com'n.
Robert L. Nabors and Thomas H. Duffy of Nabors, Giblin & Nickerson, P.A., Tallahassee, amicus curiae for Florida Ass'n of Counties, Inc.
*106 GRIMES, Justice.
This is an appeal from a final judgment of the Eighteenth Judicial Circuit of Florida. The case was certified by the Fifth District Court of Appeal as involving an issue of great public importance that will have a great effect on the proper administration of justice throughout the state and that requires immediate resolution by this Court. We have jurisdiction under article V, section 3(b)(5) of the Florida Constitution.
Lake Mary Boulevard is a two-lane county road that is maintained by Seminole County and passes through the City of Lake Mary. Pursuant to a franchise agreement with the city, Florida Power Corporation (FPC) maintains overhead power lines along the right of way. Upon determining to widen Lake Mary Boulevard, the city and the county enacted ordinances requiring FPC to relocate its power lines underground. The city's ordinance stated that FPC must bear the entire cost of undergrounding. While the county's ordinance was silent as to who would pay the cost of placing the power lines underground, the county unequivocally declared that it would not do so.
FPC sued the city and the county for a declaratory judgment and injunctive relief against the enforcement of the ordinances. FPC admitted that it was obligated under section 337.403(1), Florida Statutes (1989), to relocate the lines overhead within the new right of way at its expense. However, FPC contended that it would cost an additional $1,250,000 to place the lines underground. FPC was willing to place the lines underground only if the city and the county would bear the additional cost. Following the trial, the circuit judge upheld the validity of the ordinances and directed FPC to place its power lines underground or to remove them entirely from the right of way.
On appeal, the parties, supported by their respective amici curiae, make numerous contentions. Most significantly, FPC asserts that the ordinance invades the exclusive authority of the Public Service Commission to regulate rates and service. It says that if the ordinances are upheld, similar ordinances would be certain to follow and that the aggregate cost of converting all of FPC's lines to underground lines would exceed $2.5 billion. The city relies upon its constitutional grant of authority under article VIII, section 2(b) of the Florida Constitution, as well as its legislative grant of authority through the Municipal Home Rule Powers Act, chapter 166, Florida Statutes (1989). The county, which operates under a charter form of government, stresses its authority under article VIII, section 1(g) of the Florida Constitution, as well as section 125.01(3)(a) and (b), Florida Statutes (1989). Both the city and the county rely heavily upon section 337.403(1), Florida Statutes (1989), which was cited by the circuit judge as authority for his ruling. Upon consideration, we conclude that FPC must prevail.
Section 366.04(1), Florida Statutes (1989), expressly confers jurisdiction on the Public Service Commission to "regulate and supervise each public utility with respect to its rates and service." This section further provides that the jurisdiction conferred upon the commission "shall be exclusive and superior to that of all ... municipalities ... or counties, and, in case of conflict therewith, all lawful acts, orders, rules, and regulations of the commission shall in each instance prevail." § 366.04(1), Fla. Stat. (1989).
The Public Service Commission has broad powers in the exercise of its "exclusive and superior" jurisdiction, including:
[the] power to prescribe fair and reasonable rates and charges, classifications, standards of quality and measurements, and service rules and regulations to be observed by each public utility; to require repairs, improvements, additions, and extensions to the plant and equipment of any public utility when reasonably necessary to promote the convenience and welfare of the public and secure adequate service or facilities for those reasonably entitled thereto; . .. and to prescribe all rules and regulations reasonably necessary and appropriate for *107 the administration and enforcement of this chapter.
§ 366.05(1), Fla. Stat. (1989).
Requiring FPC to place its power lines underground clearly affects its rates if not its service. As with any other regulated public utility, FPC is entitled to charge rates sufficient to make a reasonable rate of return. § 366.041(1), Fla. Stat. (1989); see also Gulf Power Co. v. Florida Pub. Serv. Comm'n, 453 So.2d 799 (Fla. 1984). If FPC has to expend large sums of money in converting its overhead power lines to underground, these expenditures will necessarily be reflected in the rates of its customers.
We believe that the jurisdiction of the Public Service Commission to regulate rates and services of public utilities preempts the authority of the city and county to require FPC to place its lines underground. While the authority given to cities and counties in Florida is broad, both the constitution and statutes recognize that cities and counties have no authority to act in areas that the legislature has preempted. See, e.g., art. VIII, §§ 1(f), 1(g), 2(b), Fla. Const.; §§ 125.01, 166.021, Fla. Stat. (1989); Tribune Co. v. Cannella, 458 So.2d 1075 (Fla. 1984), appeal dismissed sub nom. Deperte v. Tribune Co., 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985); Speer v. Olson, 367 So.2d 207 (Fla. 1978). In an analogous situation, this Court held that the City of Miami had no authority to regulate the payment of workers' compensation benefits. Barragan v. City of Miami, 545 So.2d 252 (Fla. 1989). We explained:
Section 166.021(3)(c), Florida Statutes (1987), which is part of the municipal home rule powers act, limits cities from legislating on any subject expressly preempted to state government by general law. The preemption need not be explicit so long as it is clear that the legislature has clearly preempted local regulation of the subject. Tribune Co. v. Cannella, 458 So.2d 1075 (Fla. 1984), appeal dismissed, 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835 (1985). There can be no doubt that chapter 440 has preempted local regulation on the subject of workers' compensation.
Barragan, 545 So.2d at 254.
The highest courts of four other states have also rejected local governments' attempts to mandate the placing of underground facilities at a utility's expense. In striking down an ordinance similar to those involved in the instant case, the Missouri Supreme Court graphically explained why statewide regulation of the subject was necessary.
If [the City] had the right by its ordinance to specify how [the utility] should design and install its transmission lines or to require it to spend this substantially greater sum in constructing said lines, then other municipalities would have like authority.... If 100 such municipalities each had the right to impose its own requirements with respect to installation of transmission facilities, a hodgepodge of methods of construction could result and costs and resulting capital requirements could mushroom. As a result, the supervision and control by the Public Service Commission with respect to the company, its facilities, its method of operation, its service, its indebtedness, its investment, and its rates which the General Assembly obviously contemplated would be nullified.
Union Elec. Co. v. City of Crestwood, 499 S.W.2d 480, 483 (Mo. 1973).
Likewise, in Vandehei Developers v. Public Service Commission, 790 P.2d 1282 (Wyo. 1990), the county argued that it could condition the utility's use of the county's right of way on the requirement that the line be placed underground. In declaring the ordinance invalid, the Wyoming Supreme Court held that while the legislature had provided that the permission of the county was required to use the right of way, the statute did not grant the county the authority to regulate public utilities and that such authority rested exclusively with the Public Service Commission. Accord Public Serv. Co. v. Town of Hampton, 120 N.H. 68, 411 A.2d 164 (1980); Duquesne Light Co. v. Upper St. Clair Township, 377 Pa. 323, 105 A.2d 287 (1954).
*108 The city seeks to distinguish this case from the cases from other jurisdictions by pointing out that they involved the undergrounding of transmission lines rather than distribution lines. However, this distinction, based solely upon the amount of voltage carried in the line, is irrelevant to the legal issue involved in those cases. There is nothing in the stated rationale of those decisions that suggests there would have been a different result if the lines to be undergrounded were distribution rather than transmission lines.
The circuit judge's reliance on section 337.403(1), Florida Statutes (1989), is misplaced. This statute reads in part as follows:
(1) Any utility heretofore or hereafter placed upon, under, over, or along any public road that is found by the authority to be unreasonably interfering in any way with the convenient, safe, or continuous use, or the maintenance, improvement, extension, or expansion, of such public road shall, upon 30 days' written notice to the utility or its agent by the authority, be removed or relocated by such utility at its own expense except as provided in paragraphs (a) and (b).
The statute does not grant localities the power to mandate the type of system to be used by a utility or to determine who should pay for such a system. It merely provides for the removal or relocation of utility facilities when necessary to accommodate expansion or maintenance. The city and county have done more than direct FPC to remove or relocate its lines to accommodate the road widening. The words "removed or relocated" do not suggest the extraordinary requirement of conversion of an overhead electric system to an underground system as a condition of use of the right of way.
If there was any doubt that the legislature did not intend that cities and counties could dictate the decision of whether public utilities should convert their overhead systems to underground, this was laid to rest by the enactment of section 366.04(7)(a), Florida Statutes (1989), which provides in pertinent part that:
By July 1, 1990, the commission shall make a determination as to the cost-effectiveness of requiring the installation of underground electric utility distribution and transmission facilities for all new construction, and for the conversion of overhead distribution and transmission facilities to underground distribution and transmission facilities when such facilities are replaced or relocated... . Upon a finding by the commission that the installation of underground distribution and transmission facilities is cost-effective, the commission shall require electric utilities, where feasible, to install such facilities.
Thus, the Public Service Commission is vested with the authority to require conversion of distribution lines to underground where "feasible" if the commission finds this to be "cost-effective." Permitting cities or counties to unilaterally mandate the conversion of overhead lines to underground would clearly run contrary to the legislative intent that the Public Service Commission have regulatory authority over this subject.
In addition, through its use of the language "conversion of overhead distribution and transmission facilities to underground distribution and transmission facilities," the legislature has further weakened two of the contentions relied upon by the city and the county that were discussed earlier in this opinion. First, the language indicates that the words "removed or relocated" as used in section 337.403(1) were not intended to encompass the changing of overhead facilities to underground facilities. Moreover, it suggests that the legislature does not make the distinction between distribution and transmission lines by which the city and county seek to distinguish the out-of-state cases.
We hold that the ordinances requiring FPC to convert its overhead lines along Lake Mary Boulevard to underground lines are invalid. In view of our disposition of the case, we do not pass upon FPC's contention that the city's ordinance impermissibly impaired its franchise agreement. We hasten to point out that our ruling does *109 not limit the ability of cities and counties to require developers of new subdivisions to place their electric power supply facilities underground. We reverse the judgment and remand for entry of a judgment in favor of FPC.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, KOGAN and HARDING, JJ., concur.
McDONALD, J., dissents.