# Supreme Court of Florida

_____

No. SC21-917
_____

**NICOLE "NIKKI" FRIED, etc.,**
Petitioners,

vs.

**STATE OF FLORIDA, et al.,**
Respondents.

_____

No. SC21-918
_____

**CITY OF WESTON, FLORIDA, et al.,**
Petitioners,

vs.

**STATE OF FLORIDA, et al.,**
Respondents.
_____

January 19, 2023

POLSTON, J.

This case involves whether the common law doctrines of

legislative immunity and governmental function immunity prohibit

the statutory civil actions and penalties imposed against local governments and officials for certain violations of section 790.33, Florida Statutes (2021), the firearms preemption statute. We agree with the decision of the First District Court of Appeal in *State v. City of Weston*, 316 So. 3d 398 (Fla. 1st DCA 2021), that neither doctrine prohibits the statutory civil actions and penalties in sections 790.33(3)(c), (d), and (f).[1]

## I. BACKGROUND

In 1987, the Florida Legislature acted to preempt the field of firearms and ammunition regulation. *See* ch. 87-23, § 2, Laws of Fla. Section 790.33 (the "Preemption Statute"), currently provides as follows:

> PREEMPTION.—Except as expressly provided by the State Constitution or general law, the Legislature hereby declares that it is occupying the whole field of regulation of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation thereof, to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto. Any such existing ordinances, rules, or regulations are hereby declared null and void.

---

1. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

§ 790.33(1), Fla. Stat. (2021). The Legislature's express intent in enacting the Preemption Statute was to maintain uniform firearms laws throughout Florida; to nullify and void all ordinances and regulations not enacted at the state or federal level; "to prohibit the enactment of any future ordinances or regulations relating to firearms, ammunition, or components thereof unless specifically authorized by this section or general law"; and "to require local jurisdictions to enforce state firearms laws." § 790.33(2)(a). Petitioners in this case do not challenge the Legislature's authority to preempt the field of regulation of firearms and ammunition.

The Preemption Statute also contains the following exceptions:

(a) Zoning ordinances that encompass firearms businesses along with other businesses, except that zoning ordinances that are designed for the purpose of restricting or prohibiting the sale, purchase, transfer, or manufacture of firearms or ammunition as a method of regulating firearms or ammunition are in conflict with this subsection and are prohibited;

(b) A duly organized law enforcement agency from enacting and enforcing regulations pertaining to firearms, ammunition, or firearm accessories issued to or used by peace officers in the course of their official duties;

(c) Except as provided in s. 790.251, any entity subject to the prohibitions of this section from regulating or prohibiting the carrying of firearms and ammunition

by an employee of the entity during and in the course of the employee's official duties;

> (d) A court or administrative law judge from hearing and resolving any case or controversy or issuing any opinion or order on a matter within the jurisdiction of that court or judge; or

> (e) The Florida Fish and Wildlife Conservation Commission from regulating the use of firearms or ammunition as a method of taking wildlife and regulating the shooting ranges managed by the commission.

§ 790.33(4)(a)-(e).

In 2011, the Legislature amended the Preemption Statute, *see* chapter 2011-109, Laws of Florida, to include a series of civil penalties and actions, which apply to:

> Any person, county, agency, municipality, district, or other entity that violates the Legislature's occupation of the whole field of regulation of firearms and ammunition, as declared in subsection (1), by enacting or causing to be enforced any local ordinance or administrative rule or regulation impinging upon such exclusive occupation of the field shall be liable as set forth herein.

§ 790.33(3)(a). Relevant to this case, sections 790.33(3)(c)-(d) are applicable to local officials and provide as follows:

> (c) If the court determines that a violation was knowing and willful, the court shall assess a civil fine of up to $5,000 against the elected or appointed local government official or officials or administrative agency head under whose jurisdiction the violation occurred.

- 4 -

(d) Except as required by applicable law, public funds may not be used to defend or reimburse the unlawful conduct of any person found to have knowingly and willfully violated this section.

§ 790.33(3)(c)-(d).

Section 790.33(3)(f) is applicable to local governments and provides as follows:

1. A person or an organization whose membership is adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy, whether written or unwritten, promulgated or caused to be enforced in violation of this section may file suit against any county, agency, municipality, district, or other entity in any court of this state having jurisdiction over any defendant to the suit for declaratory and injunctive relief and for actual damages, as limited herein, caused by the violation. A court shall award the prevailing plaintiff in any such suit:

a. Reasonable attorney fees and costs in accordance with the laws of this state, including a contingency fee multiplier, as authorized by law; and

b. The actual damages incurred, but not more than $100,000.

§ 790.33(3)(f)1.

Petitioners in these consolidated cases consist of thirty municipalities, three counties, more than seventy elected officials,[2]

---

2. Adam Putnam, the then Commissioner of Agriculture, was a defendant named in the original complaints. His successor,

and one private citizen. Without enacting any of the desired ordinances and regulations, Petitioners brought suit seeking a declaration from the circuit court that the challenged provisions are invalid. Petitioners brought numerous claims alleging various constitutional violations[3] and violations of legislative immunity and governmental function immunity. On summary judgment, as relevant here, Petitioners argued that enforcement of section 790.33(3) against local officials would violate legislative immunity and enforcement of section 790.33(3)(f) and section 790.335(4)(c), Florida Statutes (2021), against local governments would violate

---

Petitioner Nicole "Nikki" Fried, declined to join the State's appeal and supported the trial court's ruling before the First District.

    3. Petitioners challenged both section 790.33, Florida Statutes (2021), and section 790.335(4)(c), Florida Statutes (2021), which penalizes governmental entities for maintaining any "list, record, or registry of privately owned firearms" or the owners of those firearms. § 790.335(2). Not relevant to this appeal, Petitioners also alleged the challenged provisions violate gubernatorial removal authority; are overbroad and unconstitutionally vague; are irrational, arbitrary, and capricious; violate the right to free speech, association, petition and instruction; violate the contract clause; and violate due process. Petitioners also sought declaratory judgment that certain proposed regulations were permissible. The circuit court denied all constitutional claims, except two pertaining to the governor removal provision in section 790.33(3)(e), which the State did not appeal.

governmental function immunity.  The circuit court invalidated the challenged provisions[4] on the grounds that (1) the penalties against local officials violate legislative immunity, and (2) the actions against local governments violate immunity for discretionary government functions.  First, while the circuit court found that "the legislature abrogated the common law legislative immunity," the circuit court also found that "legislative immunity arising from the separation of powers clause in the Florida Constitution does apply to judicial review of local legislators and cannot be waived by statute."  The circuit court explained that "[b]ecause local governments must have what amount to small legislatures, and because courts cannot interfere in legislative processes, neither this

_____

4.  The circuit court's order refers to section 790.33(3) and section 790.335(4)(c) collectively as the "penalty provisions."  For purposes of this appeal, the parties present no argument pertaining to section 790.335(4)(c).  The circuit court's order also contained several "Declarations."  One such declaration pertained to section 790.335(4)(c) and article VIII, section 5(b) of the Florida Constitution, which provides that "[e]ach county shall have the authority to require a criminal history records check and a 3 to 5-day waiting period, excluding weekends and legal holidays, in connection with the sale of any firearm occurring within such county."  The circuit court "declare[d] that counties may lawfully enact enabling regulations to enforce the Local Option powers of Article VIII, Section 5(b)."  The parties did not appeal these rulings to this Court.

court, nor any other court in Florida, can enforce the civil penalty provisions of Section 790.33 against local legislators." The circuit court also ruled that "the U.S. Constitution affords local legislators legislative immunity." Further, the circuit court found that "governmental function immunity applies and the local governmental entities and their officials are immune from suit." The circuit court explained that "were the penalty provisions to be enforced, they would necessarily subject local legislative planning decisions to judicial scrutiny because the penalty provisions create liability for enacting legislation—an inherently discretionary governmental function."

On appeal, as relevant here, Respondents argued that the circuit court erred by concluding that sections 790.33(3)(c) and (d) violate legislative immunity and that section 790.33(3)(f) violates governmental function immunity. The First District reversed the circuit court's ruling, holding "that the statutory penalty provisions disputed on appeal are valid and enforceable." *City of Weston*, 316 So. 3d at 404. The First District concluded that "[g]overnment function immunity does not shield entities that act contrary to or more restrictively than state law in the completely preempted field

of firearm and ammunition regulation. Likewise, legislative immunity does not shield individuals who knowingly and willfully act contrary to or beyond the limits of state law." *Id.* As to legislative immunity, the First District explained that "the particular attempt to invoke [legislative] immunity here occurs in direct violation of state preemption," and "[o]fficials are not immune from having to prove lack of knowing and willful intent to violate state preemption." *Id.* at 407. The First District concluded that "[t]he Florida Legislature has the authority to abrogate legislative immunity," and "[i]t has done so here." *Id.* As to governmental function immunity, the First District explained that "[t]he trial court erred in elevating the separation of powers doctrine over the state's superior legislative authority validly exercised in this case." *Id.* at 405. The First District reasoned that "[t]he separation of powers doctrine protects only lawful and authorized planning-level activity," not "violation of state preemption statutes." *Id.* at 405-06.

## II. ANALYSIS

Petitioners argue that sections 790.33(3)(c) and (d) are invalid because they violate legislative immunity, and that section 790.33(3)(f) is invalid because it violates governmental function

- 9 -

immunity. Respondents counter that the First District properly concluded that neither legislative immunity nor governmental function immunity "shields local governments and officials from the challenged statutes." *City of Weston*, 316 So. 3d at 408. We agree with Respondents and approve the First District's decision in *City of Weston*.[5]

## A. Legislative Immunity

Petitioners first argue that the First District in *City of Weston* erred in concluding that legislative immunity does not prohibit the statutory penalties in sections 790.33(3)(c) and (d) because local officials are entitled to legislative immunity for purely legislative acts. However, because legislative immunity as applied to local officials is a common law doctrine that the Legislature abrogated in the context covered by the Preemption Statute, we conclude that legislative immunity does not prohibit the statutory penalties in sections 790.33(3)(c) and (d).

---

5. This Court's standard of review is de novo. *See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

The challenged statutory provisions, sections 790.33(3)(c)-(d), applicable to local officials, provide as follows:

> (c) If the court determines that a violation was knowing and willful, the court shall assess a civil fine of up to $5,000 against the elected or appointed local government official or officials or administrative agency head under whose jurisdiction the violation occurred.

> (d) Except as required by applicable law, public funds may not be used to defend or reimburse the unlawful conduct of any person found to have knowingly and willfully violated this section.

§ 790.33(3)(c)-(d).

Legislative immunity is commonly understood as a doctrine that protects legislators from being sued for all actions taken in their lawmaking capacity and is a doctrine broadly recognized by federal and state courts alike. *See Bogan v. Scott-Harris*, 523 U.S. 44, 48 (1998) ("The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law."). Petitioners argue that legislative immunity for local officials arises from three sources: (1) Florida common law, (2) separation of powers in the Florida Constitution, and (3) federal law.

- 11 -

In Florida, the doctrine of legislative immunity is based in common law. *See Fla. House of Representatives v. Expedia, Inc.*, 85 So. 3d 517, 522 (Fla. 1st DCA 2012) ("[T]he privileges and immunities afforded to all government officials, including those who serve in the legislative branch, arise from the common law."); *cf. id.* ("[J]udicial immunity, like legislative immunity, is based on principles developed in the common law.").[6] An immunity conferred by common law may be abrogated by statute. *See McNayr v. Kelly*, 184 So. 2d 428, 430 n.6 (Fla. 1966) ("The Legislature, for example, could extend absolute immunity to certain high state, county or municipal officials or do away with the immunity altogether.").

Here, the Legislature has exercised its power—since 1987—to preempt "the whole field of regulation of firearms and ammunition." § 790.33(1). Section 790.33(3)(a) states in pertinent part that "[a]ny person . . . that violates the Legislature's occupation of the whole

---

6. The parties do not argue that the statutory protection for legislators found in section 768.28(9)(a), Florida Statutes, applies in this case. *See* § 768.28(9)(a), Fla. Stat. (2021) ("An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function.").

field of regulation of firearms and ammunition . . . by enacting or causing to be enforced *any local ordinance* . . . impinging upon such exclusive occupation of the field shall be liable as set forth herein." (Emphasis added.)  The challenged provisions, sections 790.33(3)(c) and (d), set forth the civil fines for local officials who knowingly and willfully enact a preempted firearms regulation and prohibit the use of public funds to defend or reimburse such officials.  The Preemption Statute abrogates legislative immunity in this context for local officials by establishing that civil penalties may be imposed upon local officials.  Specifically, local officials enact local ordinances, and by enacting the challenged statutory provisions, the Legislature has deprived local officials of any authority to legislate in this field beyond the enumerated exceptions. Accordingly, as the trial court and the First District in *City of Weston* concluded, the Legislature abrogated common law legislative immunity for local officials to the extent provided in the Preemption Statute.

Petitioners next argue that legislative immunity arises from the separation of powers in the Florida Constitution, citing this Court's decision in *League of Women Voters of Florida v. Florida*

- 13 -

*House of Representatives*, 132 So. 3d 135, 143 (Fla. 2013), which held "that a legislative privilege exists in Florida, based on the principle of separation of powers codified in article II, section 3, of the Florida Constitution." However, Petitioners' cited decision in *League of Women Voters* has no application to the issue in the present case. *See League of Women Voters*, 132 So. 3d at 147 n.11 ("This case does not involve legislative immunity, nor does it involve the liability of any individual legislator. We note that the legislative privilege (that is, an evidentiary privilege against compelled judicial process) is different than legislative immunity from suit, even though federal courts have held that the legislative privilege is derived from the principles underlying legislative immunity.").

Further, we find no merit in Petitioners' argument that section 790.33(3) violates separation of powers principles because it authorizes the judiciary's interference with legislative acts of local officials. Petitioners have provided no basis in the Florida Constitution or precedent indicating that it would exceed the scope of judicial power for courts to interpret statutes and hear cases where parties seek to enforce statutory violations and penalties duly enacted by the Legislature. To the contrary, it is within the

judiciary's constitutional authority and responsibility to do so. *See* art. V, Fla. Const.

We likewise reject Petitioners' argument that legislative immunity flows from article VIII of the Florida Constitution. To the contrary, article VIII expressly grants the Legislature plenary authority over the state's local governments, which have only those "powers of local self-government not inconsistent with general law." Art. VIII, § 1(g), Fla. Const. (charter counties); *see also id.* § 2(b) ("Municipalities . . . may exercise any power for municipal purposes except as otherwise provided by law."); *City of Palm Bay v. Wells Fargo Bank, N.A.*, 114 So. 3d 924, 928 (Fla. 2013) ("The critical phrase of article VIII, section 2(b)—'except as otherwise provided by law'—establishes the constitutional superiority of the Legislature's power over municipal power."). Local governments, including counties and municipalities, are creatures of the State without any independent sovereignty. *See* art. VIII, §§ 1-2, Fla. Const.; *see also Weaver v. Heidtman*, 245 So. 2d 295, 296 (Fla. 1st DCA 1971) ("[C]ounties . . . do not possess any indicia of sovereignty; they are creatures of the legislature, created under Art. VIII, Sec. 1, of the

State Constitution . . . and accordingly are subject to the legislative prerogatives in the conduct of their affairs.").

Section 790.33(3)(c) imposes a civil fine of up to $5,000 against "the elected or appointed local government official or officials or administrative agency head under whose jurisdiction the violation occurred," if a court determines the violation was "knowing and willful." Section 790.33(3)(d) prohibits the use of public funds to defend or reimburse such individuals for civil fines or costs of defense, unless another law provides to the contrary.

By expressly preempting the field of firearms and ammunition regulation, the Legislature has deprived local governments and officials of any authority or discretion to contravene, exceed, or evade the Legislature's regulation of this field (subject to the limited exceptions set forth in section 790.33(4)). *See Fla. Power Corp. v. Seminole Cnty.*, 579 So. 2d 105, 107 (Fla. 1991) ("While the authority given to cities and counties in Florida is broad, both the constitution and statutes recognize that cities and counties have no authority to act in areas that the legislature has preempted."); *Metro. Dade Cnty. v. Chase Fed. Hous. Corp.*, 737 So. 2d 494, 504 (Fla. 1999) ("If political subdivisions were able to continue actions to

enforce ordinances that conflict with general law, the political subdivisions would have the power to frustrate the ability of the Legislature to set policies for the state."). While "state legislators are immune from civil suits for their acts done within the sphere of legislative activity," *Walker v. President of the Senate*, 658 So. 2d 1200, 1200 (Fla. 5th DCA 1995), as the First District held below, "legislative immunity does not shield individuals who knowingly and willfully act contrary to or beyond the limits of state law" that provides for statutory penalties against government officials. *City of Weston*, 316 So. 3d at 404.

To the extent Petitioners argue that the challenged statutory provisions penalize "mistaken" violations of the Preemption Statute, all that is required to avoid the penalties in section 790.33(3)(c) is to refrain from knowingly and willfully violating the Preemption Statute. The narrow exceptions to the Preemption Statute are expressly identified in sections 790.33(4)(a)-(e). As argued by Respondents, before the challenged statutory provisions were added, the onus was on citizens to challenge ordinances defensively or by way of actions for declaratory and injunctive relief. By enacting these statutory provisions, the Legislature shifted the

- 17 -

burden to those in the position to violate the Preemption Statute. To the extent the parties and amici disagree with this legislative decision or argue that the challenged provisions are unnecessary or unwise, it is for the Legislature to evaluate and resolve those policy concerns. *See Hamilton v. State*, 366 So. 2d 8, 10 (Fla. 1978) ("The Legislature has a great deal of discretion in determining what measures are necessary for the public's protection, and this Court will not, and may not, substitute its judgment for that of the Legislature insofar as the wisdom or policy of the act is concerned.").

Petitioners also rely heavily on federal law recognizing legislative immunity for state, regional, and local legislators. *See Bogan*, 523 U.S. at 52 (extending legislative immunity to local government legislators); *Lake Country Ests., Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 405-06 (1979) (extending legislative immunity to regional legislators); *Woods v. Gamel*, 132 F.3d 1417, 1419 (11th Cir. 1998) ("[C]ounty commissioners can be entitled to legislative immunity when acting in their legislative capacities."). For members of Congress, legislative immunity was established in the Speech or Debate Clause of the United States Constitution,

which protects not only the speech and debate of legislators but also voting on legislative acts. *See* U.S. Const. art. I, § 6, cl. 1; *see also Tenney v. Brandhove*, 341 U.S. 367, 372-73 (1951). To the extent Petitioners rely on federal case law that has stated that article I, section 6 of the United States Constitution (the Speech or Debate Clause) creates a form of legislative immunity, Florida's Constitution does not contain a Speech or Debate Clause providing legislative immunity to members of the Legislature. *See Tenney*, 341 U.S. at 375 n.5 ("Only the Florida Constitution has no provision concerning legislative privilege."). Further, the United States Supreme Court has "made clear that the holding [in *Tenney*] was grounded on its interpretation of federal common law, not on the Speech or Debate Clause." *United States v. Gillock*, 445 U.S. 360, 372 n.10 (1980). As the First District in *City of Weston* concluded, these cases do not apply here. *See NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 190 n.10 (2d Cir. 2019) (explaining that the federal common law legislative immunity recognized by the Supreme Court protects only against federal claims, may be abrogated by federal statute, and affords no protection from state law actions for damages); *League of Women Voters*, 132 So. 3d at

- 19 -

152 ("[F]ederal courts have long recognized the existence of a federal legislative privilege based on the explicit text of the Speech or Debate Clause of the United States Constitution and through federal common law—neither of which applies to an action in state court based on a specific prohibition in the state constitution.").

Accordingly, because legislative immunity as applied to local officials is a Florida common law doctrine that the Legislature abrogated in the context addressed in the Preemption Statute, we conclude that the First District properly concluded that legislative immunity does not prohibit the statutory penalties in section 790.33(3)(c) and (d).

## B. Governmental Function Immunity

Petitioners next argue that the First District erred in concluding that governmental function immunity does not prohibit the statutory actions in section 790.33(3)(f).[7]  We disagree.

Section 790.33(3)(f) is applicable to local governments and provides as follows:

---

7. The First District's decision in *City of Weston* also addressed section 790.335(4)(c).  However, in this review proceeding, Petitioners make no argument with regard to this statute; therefore, any argument would be deemed waived, and we do not address this statute.

- 20 -

(f)1. A person or an organization whose membership is adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy, whether written or unwritten, promulgated or caused to be enforced in violation of this section may file suit against any county, agency, municipality, district, or other entity in any court of this state having jurisdiction over any defendant to the suit for declaratory and injunctive relief and for actual damages, as limited herein, caused by the violation.  A court shall award the prevailing plaintiff in any such suit:

a. Reasonable attorney fees and costs in accordance with the laws of this state, including a contingency fee multiplier, as authorized by law; and

b. The actual damages incurred, but not more than $100,000.

§ 790.33(3)(f)1.

Florida has a broad statutory waiver of sovereign immunity in tort suits for the State.  *See* § 768.28(1), Fla. Stat. (2021) ("[T]he state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act.").  However, governmental function immunity, also called discretionary function immunity, is a doctrine under which "certain 'discretionary' governmental functions remain immune from tort liability . . . because certain functions of coordinate branches of government may not be subjected to

scrutiny by judge or jury as to the wisdom of their performance."

*Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1022 (Fla. 1979). We have explained that "[i]t is 'the nature of the conduct, rather than the status of the actor,' that determines whether the function is the type of discretionary function which is, by its nature, immune from tort liability." *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah,* 468 So. 2d 912, 918 (Fla. 1985) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813 (1984)).

Petitioners argue that the enforcement of penalties against local governments would violate governmental function immunity because the process of determining what is preempted under the Preemption Statute remains inherently discretionary. However, to engage in conduct that is prohibited by statute is not a discretionary function. As the First District concluded below, "[g]overnment function immunity does not shield entities that act contrary to or more restrictively than state law in the completely preempted field of firearm and ammunition regulation." *City of Weston,* 316 So. 3d at 404.

The Florida Constitution expressly grants the Legislature plenary authority over the state's local governments, which have only those "powers of local self-government not inconsistent with general law." Art. VIII, § 1(g), Fla. Const. (charter counties); *see also id.* § 2(b) ("Municipalities . . . may exercise any power for municipal purposes except as otherwise provided by law."). We have explained that if the rule were otherwise, the state's "political subdivisions would have the power to frustrate the ability of the Legislature to set policies for the state." *Metro. Dade Cnty.*, 737 So. 2d at 504. The constitution also confers exclusively upon the Legislature the power to abrogate common law and restrict local government power. *See* art. VIII, §§ 1-2, Fla. Const.; *McNayr*, 184 So. 2d at 430 n.6 (acknowledging that the Florida Legislature has the authority to "do away with the immunity altogether" as it applied to local officials). For example, the Legislature can abolish counties by general law, *see* art. VIII, § 1, Fla. Const. ("The state shall be divided by law into political subdivisions called counties. Counties may be created, abolished or changed by law . . . ."), and municipalities exist only by virtue of general law, *see* ch. 165, Fla. Stat. (2021). The Legislature is likewise authorized to enact general

- 23 -

laws preempting all regulation in an area of the law. *See Metro. Dade Cnty.*, 737 So. 2d at 504 ("[W]henever 'any doubt exists as to the extent of a power attempted to be exercised which may affect the operation of a state statute, the doubt is to be resolved against the ordinance and in favor of the statute.' ") (quoting *Rinzler v. Carson*, 262 So. 2d 661, 668 (Fla. 1972)).

By enacting the Preemption Statute, the Legislature exercised its power to preempt the field of firearms and ammunition (subject to limited exceptions). *See* §§ 790.33(1), (4). As it did in the present case, the Legislature has the authority to change substantive law. Section 790.33(3)(f) authorizes lawsuits against local governments and authorizes awards of damages, attorney's fees, and costs to prevailing plaintiffs. The imposition of these civil statutory actions for violations of the Preemption Statute does not violate governmental function immunity. It is not a core municipal function to occupy an area that the Legislature has preempted, and local governments have no lawful discretion or authority to enact ordinances that violate state preemption. *See Fla. Power Corp.*, 579 So. 2d at 107 ("While the authority given to cities and counties in Florida is broad, both the constitution and statutes recognize that

- 24 -

cities and counties have no authority to act in areas that the legislature has preempted.").

Accordingly, we conclude that the First District did not err in concluding that governmental function immunity does not prohibit the statutory actions in section 790.33(3)(f).

### III. CONCLUSION

For the reasons explained above, we conclude that neither legislative immunity nor governmental function immunity prohibit the statutory actions and penalties in section 790.33(3)(c), (d), and (f). Accordingly, we approve the First District's decision in *City of Weston.*

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.
FRANCIS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

In its order granting summary judgment in favor of dozens of cities, counties, and elected local government officials, the trial court correctly observed that the Legislature has the authority to

- 25 -

abolish counties and cities if it chooses to do so.[8]  Additionally, the

Legislature has the power and authority to preempt local

government control by general law.  However, this broad legislative

power and authority is not without limits.  The trial court explained:

> But once those governments are established, the
> Constitution mandates certain requirements for how they
> must be set up.  The establishment of a legislative county
> commission is one.  Art. VIII, Section 1(e), Fla. Const.
> Establishing municipal legislative bodies is another.  Art.
> VIII, Section 2, Fla. Const.  The legislature cannot change
> these fundamental aspects of counties and cities without
> amending the Constitution.  In following this reasoning,
> the court sees no relevance to the legislative supremacy
> argument when considering the separation of powers
> question because the legislature cannot change the
> fundamental aspects of separation of powers.

Here, the majority approved a penalty provision included by

the Legislature in section 790.33(3)(c)-(d) applicable to local

officials.  The provision imposes a fine of up to $5,000 against

elected or appointed local government officials or administrative

agency heads for "knowing and willful" violations of the statute.

---

8.  Article VIII, section 1(a) of the Florida Constitution provides that "[c]ounties may be created, abolished or changed by law." Section 2(a) provides that "[m]unicipalities may be established or abolished and their charters amended pursuant to general or special law."

Section (3)(d) also prohibits the use of public funds to defend or reimburse the public official "found to have knowingly and willfully violated this section." To make matters worse, section 790.33(3)(c) requires the judicial branch to determine whether the violation by the public official was "knowing and willful."

As noted by the trial court, "[j]udicial power is vested in courts alone and judges cannot wield executive or legislative power. As a part of this separation, Florida courts cannot question any legislator about her or his legislative process because it would be impermissible judicial meddling in a purely political matter." Consequently, the requirement of judicial involvement in determining whether the action of the public official was "knowing and willful" amounts to nothing less than an impermissible judicial intrusion into the official's legislative thought process, and it undermines the official's ability to effectuate the constituents' will.

As aptly observed by the trial court, "[b]ecause local governments must have what amounts to small legislatures, and because courts cannot interfere in legislative processes, neither this court, nor any other court in Florida, can enforce the civil penalty provisions of [s]ection 790.33 against local legislators."

I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal Direct Conflict of Decisions and Statutory Validity/Direct Conflict of Decisions

First District – Case No. 1D19-2819

(Leon County)

Genevieve Hall and Steven Hall, General Counsel, Florida Department of Agriculture and Consumer Services, Tallahassee, Florida,

    for Petitioner, Nicole "Nikki" Fried, as Commissioner of Florida Department of Agriculture and Consumer Services

Edward G. Guedes and Jamie A. Cole of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, Florida,

    for Petitoners, Weston, Miramar, Pompano Beach, Pinecrest, South Miami, Miami Gardens, Cutler Bay, Lauderhill, Boca Raton, Surfside, Tallahassee, North Miami, Orlando, Fort Lauderdale, Gainesville, St. Petersburg, Maitland, Key Biscayne, Turkel, West Palm Beach, North Miami Beach, Safety Harbor, Village of Palmetto Bay, Dunedin, and Riviera Beach

LaShawn D. Riggans, County Attorney, Tallahassee, Florida,

    for Petitioner, Leon County

Michael Cardozo and Chantel L. Febus of Proskauer Rose LLP, New York, New York, Matthew Triggs of Proskauer Rose LLP, Boca Raton, Florida, and Joseph S. Hartunian of Proskauer Rose LLP, Washington, District of Columbia; and Eric A. Tirschwell of Everytown Law, New York, New York,

- 28 -

for Petitioners, Dan Daley, Frank C. Ortis, Rebecca A. Tooley, Justin Flippen, City of Coral Springs, City of Pembroke Pines, City of Coconut Creek, and City of Wilton Manors

Abigail G. Corbett and Veronica L. De Zayas of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, Florida,

for Petitioner, Coral Gables

Andrew J. Meyers, René D. Harrod, Nathaniel A. Klitsberg, and Joseph K. Jarone, County Attorneys, Fort Lauderdale, Florida,

for Petitioner, Broward County

Geraldine Bonzon-Keenan, Altanese Phenelus, Shanika A. Graves, and Angela F. Benjamin, County Attorneys, Miami, Florida,

for Petitioner, Miami-Dade County

Robert F. Rosenwald, Jr., Rafael Paz, Aleksandr Boksner, and Raul J. Aguila, City Attorneys, Miami Beach, Florida,

for Petitioner, City of Miami Beach

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, and Daniel William Bell, Chief Deputy Solicitor General, Office of the Attorney General, Tallahassee, Florida,

for Respondents

Eric J. Friday of Kingry & Friday, PLLC, Jacksonville, Florida,

for Amicus Curiae Florida Carry, Inc.

John Parker Sweeney, James W. Porter, III, Marc A. Nardone, and Connor M. Blair of Bradley Arant Boult Cummings LLP, Washington, District of Columbia, and R. Craig Mayfield of Bradley Arant Boult Cummings LLP, Tampa, Florida,

for Amicus Curiae National Rifle Association of America, Inc.

Philip R. Stein, Kenneth Duvall, and Ilana Drescher of Bilzin Sumberg Baena Price & Axelrod LLP, Miami, Florida; and Brook Dooley, David J. Rosen, Anna Porto, and Andrew S. Bruns of Keker, Van Nest & Peters LLP, San Francisco, California,

for Amici Curiae Local Government Law Professors and League of Women Voters of Florida, Giffords Law Center to Prevent Gun Violence, Brady, and Equality Florida Institute, Inc.

Michael Spellman of Sniffen & Spellman, P.A., Tallahassee, Florida; Kraig Conn and Rebecca O'Hara of Florida League of Cities, Inc., Tallahassee, Florida; and Edward G. Labrador of Florida Association of Counties, Tallahassee, Florida,

for Amici Curiae Florida League of Cities and the Florida Association of Counties